**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**CYNTHIA PEPE,**

**Plaintiff**

**v.** **No. 1:25-cv-00537-GJF-LF**

**NATIONAL TECHNOLOGY AND ENGINEERING SOLUTIONS OF SANDIA, LLC, dba SANDIA NATIONAL LABORATORIES, and LILIANA SHELTON, in her official and individual capacities,**

**Defendants.**

## MEMORANDUM OPINION AND ORDER

This is an employment case in which Plaintiff Cynthia Pepe alleges that her employer, Defendant National Technology and Engineering Solutions of Sandia, LLC, dba Sandia National Laboratories ("NTESS" or "Sandia"), and Defendant Liliana Shelton, violated the Family and Medical Leave Act ("FMLA") and Americans with Disabilities Act ("ADA"). On April 8, 2026, the Honorable Kirtan Khalsa entered an Order granting in part and denying in part Plaintiff's *First Motion to Compel Discovery* (Dkt. No. 49) and Plaintiff's *Opposed Motion to Extend Case Management Deadlines* (Dkt. No. 57). *See* Order 1, Dkt. No. 69. Plaintiff timely filed *Objections to the Court's April 8, 2026 Order Granting and Denying in Part Plaintiff's Motions to Compel and to Extend Deadlines* (Dkt. No. 84) ("Objections"). Defendants oppose the objections. Resp., Dkt. No. 91. Now having considered the objections, response, record, and relevant law, this Court concludes that the April 8, 2026, Order is neither clearly erroneous nor contrary to law and will overrule Plaintiff's objections.

### I. BACKGROUND

On August 13, 2025, the Court held a Rule 16 Initial Scheduling Conference in which the

parties and Court agreed to a 240-day discovery track. Clerk's Minutes 1, Dkt. No. 22. The Court ensured that the parties understood that they would "need to show exceptionally good cause to obtain an extension of discovery given this lengthy track." *Id.* The Court then entered a Scheduling Order with the following relevant deadlines: Plaintiff's expert disclosures due December 30, 2025; Defendants' expert disclosures due January 30, 2026; and discovery due April 10, 2026. Order 1-2, Dkt. No. 23. The undersigned set the case for jury trial on November 9, 2026. Order, Dkt. No. 28. The Court subsequently entered a *Stipulated Protective & Confidentiality Order and Use and Disclosure Agreement* (Dkt. No. 38). On January 2, 2026, the Court granted an unopposed motion to extend the expert disclosure deadlines to February 27, 2026, for Plaintiff, and March 27, 2026, for Defendants. Order, Dkt. No. 40. The parties sought the extension for cost efficiencies should the case be resolved at the settlement conference then set on February 18, 2026. *See* Pl.'s Unopposed Mot. to Extend 1, Dkt. No. 39.

After receiving two extensions, on February 2, 2026, Plaintiff filed her *First Motion to Compel Discovery* (Dkt. No. 49). *See* Orders, Dkt. No. 43 & 46. Plaintiff sought production of responsive documents in native format with preserved metadata. *See* Pl.'s First Mot. to Compel ("First MTC") 2-3, Dkt. No. 49. She asserted that Defendants' production in .pdf format was burdensome to review and search, because the emails were produced in randomized order and without the attachments as part of the original email. *See id.* Second, Plaintiff argued that Defendants improperly redacted documents based on attorney-client privilege and failed to produce a complete privilege log. *See id.* at 5-7. Lastly, Plaintiff contended that the records should be produced in Mountain Standard Time ("MST"), not with Greenwich Mean Time ("GMT") timestamps, and that she is entitled to attorney's fees. *Id.* at 7-8.

On February 10, 2026, the Court vacated and rescheduled the settlement conference. Order,

Dkt. No. 52. Plaintiff informed Defendants on February 26, 2026, that she retained two experts but needed time to produce their reports. *See* Defs.' Ex. D, Dkt. No. 64-4 at 1-2. The next day, Defendants agreed to a one-week extension of the expert disclosure deadline but opposed extending all other case management deadlines. *Id.* at 1.

After receiving an extension, on February 27, 2026, Defendants filed a response in opposition to the motion to compel. *See* Order, Dkt. No. 54; Defs.' Resp. to First MTC 4, Dkt. No. 56. As relevant here, Defendants contended that they had produced over 5,000 pages of documents and that the issue was primarily one of formatting or the manner in which they were marked as privileged. *See* Defs.' Resp. to First MTC 4, Dkt. No. 56. Regarding production of native emails, Defendants asserted that doing so creates a risk of inadvertent disclosure of confidential or sensitive information because of embedded metadata or attachments with such information. *Id.* at 5-6. Turning to the privilege issue, Defendants argued that the parties agreed to a reasonable cutoff date for the privilege log of December 5, 2023, when Plaintiff's attorney became involved and thereafter the communications would be in anticipation of litigation. *See id.* at 2-3, 6-7. According to Defendants, only 17 documents were included on the privilege log, and of the post-anticipation of litigation communications, redacted portions withheld for attorney-client privilege are clearly identified. *Id.* at 7. Defendants insisted that continuous production of an updated privilege log each time counsel communicates with the client would be impractical and burdensome. *Id.* at 3. Finally, they noted that the GMT to MST conversion is a simple calculation. *Id.* at 4 n.4.

On February 27, 2026, Plaintiff filed an *Opposed Motion to Extend Case Management Deadlines* (Dkt. No. 57), stating that good cause existed because, despite Plaintiff's diligent efforts to obtain discovery, outstanding production issues remained unresolved. *See* Pl.'s Mot. to Extend 4-5, Dkt. No. 57. According to Plaintiff, Defendants' failure to produce the documents in their

native format stymied her review of them, which she was waiting on to conduct her depositions. *See id.* at 5. She noted that she planned to issue additional discovery requests required by her economic damages witness. *Id.* at 6. Further, she explained that her expert witnesses needed more time to prepare their reports, as the parties agreed to extend expert deadlines until after mediation to reduce litigation costs. *See id.* at 2-3, 6.

Defendants opposed the extension of case management deadlines for lack of exceptionally good cause, and because an extension would further compress the remainder of litigation given the trial date. *See* Defs.' Resp. 1-2, 5-6, Dkt. No. 64. They noted that Plaintiff agreed to a schedule that set expert disclosure deadlines before the settlement conference. *Id.* at 3. They further argued that the existence of a discovery disagreement should not halt progress of the case, especially where they already had produced more than 5,000 pages of documents. *See id.* at 4-5.

After briefing on both motions was complete, Judge Khalsa held a hearing on the motions on April 7, 2026. *See* Notices, Dkt. Nos. 61 & 67; Clerk's Minutes, Dkt. No. 70. Following the hearing, Judge Khalsa entered an Order granting the motions in part and denying them in part. Order, Dkt. No. 69. With respect to the motion to compel documents in their native format, Judge Khalsa granted the motion to compel

> as to non-privileged emails and those for which native form production [ ] does not implicate legitimate security concerns. Thus, with the exception of (1) any emails including their attachments that were previously produced in PDF format and redacted based on attorney client privilege, or (2) any emails including their attachments that were previously produced in PDF format for which Defendants have a legitimate security concern related to the production of native format with preserved metadata, Defendants must produce for "attorneys-eyes only" review, all non-privileged or non-sensitive responsive emails including their attachments in their native form with preserved metadata by no later than April 14, 2026. If Defendants withhold from this native format production any email chains based on their claim that such production presents a legitimate security concern, by no later than April 14, 2026, they must file[] a notice (under seal if appropriate) (1) identifying the bates numbers of the previously produced PDF copies of those emails and their attachments, and (2) attaching an appropriately supported affidavit

> from a representative with knowledge explaining the security issue justifying the withholding of this material in native form.

*Id.* at 2-3 (internal footnote omitted). Judge Khalsa denied Plaintiff's request to compel Defendants to produce in native form with preserved metadata any other material previously bates numbered and produced in PDF format, including Plaintiff's personnel file, the EEOC file, policies and procedures, training documents, and teams messages, because Plaintiff failed to show the production is proportional to the needs of the case or important to resolving the issues presented. *Id.* at 3.

With respect to documents withheld based on attorney-client privilege, Judge Khalsa denied the motion to compel insofar as Plaintiff "seeks a finding that Defendants have waived attorney client privilege by not producing a complete privilege log" and seeks a detailed privilege log of all privileged material created after Plaintiff's counsel gave written notice to Defendants of impending litigation. *Id.* at 5. Judge Khalsa, however, granted the motion to compel as follows:

> Specifically, as to any responsive material created prior to January 2, 2024, and withheld or redacted on a claim of attorney client privilege only, Defendants must produce to Plaintiff a supplemental complete and detailed privilege log by no later than April 14, 2026. By this same date, Defendants must also produce to the Court … (1) a copy of their supplemental complete privilege log and (2) unredacted copies of all Sandia produced documents attached as Exhibit 4 to Plaintiff's Motion to Compel for the Court's in-camera review.

*Id.* at 5-6. Judge Khalsa permitted Plaintiff to lodge objections to assertions of privilege after reviewing the log. *Id.* at 6. Further, Judge Khalsa ruled:

> As to responsive material Defendants have withheld only on the basis of attorney client privilege that was created after January 2, 2024, the Court will not require Defendants to produce a privilege log for communications made in confidence for the primary purpose of obtaining legal advice (1) between in-house counsel and managers of Defendant and/or (2) between managers of Defendant. If they have only withheld post January 2, 2024 attorney client material because it falls within these above listed categories, Defendants must supplement their discovery responses to so state. On the other hand, if Defendants have withheld other material created after January 2, 2024 on a claim of attorney client privilege not falling

> within the categories listed above, Defendant must produce a supplemental privilege log to counsel and the Court by no later than April 14, 2026, to which Plaintiff may object by April 16, 2026, and Defendants may respond by April 17, 2026. The Court will determine whether to conduct an in-camera review of any such material after reviewing the parties' submissions. In all other respects, Plaintiff's Motion to Compel is denied.

*Id.* Because the Court did not award full relief as requested in the motion to compel, it declined to apportion reasonable expenses. *Id.* at 6-7.

Regarding the motion to extend deadlines, the Court did not find good cause to extend all requested deadlines, especially given the parties' longer 240-day discovery track. *See id.* at 8. The Court noted that Plaintiff had the material in .pdf form, but counsel chose not to conduct a full review of that material. *Id.* Further, the Court listed other actions not showing diligence: Plaintiff's counsel waited until the day her expert reports were due to seek an extension; she still had not produced them a month later; and Plaintiff had yet to take a single deposition or even notice the Rule 30(b)(6) deposition she sought. *Id.* Nevertheless, to provide some relief from Plaintiff's "counsel's mismanagement of discovery," Judge Khalsa exercised discretion to permit the parties to disclose and depose retained experts and for Plaintiff to depose Defendant Shelton and the two fact witnesses counsel identified at the April 7, 2026, hearing. *Id.* The Court, however, refused to permit Plaintiff to conduct a 30(b)(6) deposition because of her counsel's lack of diligence in waiting until three days before the end of discovery to raise her request. *See id.* at 8-9.

Plaintiff timely objected to the Order. *See* Obj., Dkt. No. 84. For their part, Defendants contend that Judge Khalsa's rulings were not clearly erroneous or contrary to law. Defs.' Resp. 1, Dkt. No. 91.

## II. LEGAL STANDARD

Rule 72(a) of the Federal Rules of Civil Procedure authorizes a party to object to a magistrate judge's non-dispositive order. "The [presiding] judge in the case must consider timely

objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). This rule finds its statutory foothold in 28 U.S.C. § 636(b)(1)(A), which empowers the presiding judge "to reconsider any [non-dispositive] pretrial matter . . .where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." To overturn a magistrate judge's decision as clearly erroneous, the presiding judge must have a "definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). With respect to the "contrary to law" standard, the presiding judge conducts a plenary review of the magistrate judge's legal determinations, nullifying the order only if it applied an incorrect legal standard. *See* Charles Alan Wright, et al., 12 FEDERAL PRACTICE & PROCEDURE § 3069 (3d ed. 2026 update). "In sum, it is extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the [presiding] judge." *Id.*

## III. ANALYSIS

### A. Court overrules objection to ruling regarding native form documents.

Rule 26 of the Federal Rules of Civil Procedure defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Courts should "liberally construe" Rule 26. *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 649 (D.N.M. 2007). But, while discovery is broad, it is not without limits, and a court has wide discretion in balancing the needs and rights of both parties. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d

1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). Rule 34 permits a party to serve on the opposing party a request for production of documents or electronically stored information within the scope of Rule 26(b). Fed. R. Civ. P. 34(a)(1).

The party resisting discovery has the ultimate burden to demonstrate the validity of the party's objection. *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 204 (D. Kan. 1996). Here, Defendants bore the burden of making a specific objection and showing that the discovery fails the proportionality calculation by coming forward with specific information that addresses the Rule 26(b) factors. *See Mir v. L-3 Communications Integrated Systems, L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016). But, the "party seeking discovery, to prevail on a motion to compel, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing." *Id.*

Plaintiff asserts that Judge Khalsa impermissibly required her to make a heightened showing to justify production of the documents in native form. The Court disagrees. Judge Khalsa correctly relied on Rules 26(b)(1) and 34. At the hearing, Judge Khalsa carefully weighed relevance and proportionality concerns. What Plaintiff characterizes as Judge Khalsa shifting the burden to Plaintiff to show a heightened need for the documents was Judge Khalsa inquiring how the metadata for certain categories of the already-produced documents was relevant and important in resolving the issues. Those inquiries helped inform the Rule 26(b) analysis. Judge Khalsa carefully parsed the various categories of documents to determine which may have relevant metadata that should be produced despite the burden on Defendants.

Next, Plaintiff argues that Defendants claimed, without evidence, that there were security and privacy concerns that required producing the documents in .pdf form rather than as native files. Defendants explained in their response and at the hearing that the email communications contain embedded metadata or attachments that may include sensitive data, including personal identifying information. *See* Resp. 5-6, Dkt. No. 56; April 7, 2026, Liberty Recording, ABQ-Hondo_20260407_132006 ("Liberty Recording") at 1:39:15-143:44. According to Defendants, they conducted a review of each email and attachment and redacted sensitive information, but that the same information cannot be redacted if the documents are produced in native form. *See id.*

Contrary to Plaintiff's representation, Judge Khalsa did not give "great weight" to Defendants' claim of security or privacy interests. Instead, she ordered that, if Defendants have a security reason for withholding any native form document, Defendants must support the withholding with an affidavit explaining why the information should not be produced. *See* Liberty Recording at 2:57:09-2:58:39; Order 3, Dkt. No. 69. As for personal identifying information, the Court discussed with the parties how best to balance disclosure of the metadata without burdening Defendants with having to conduct a complete second review of all the same documents to redact sensitive information. *See id.* at 2:58:40-3:07:00. Rather than modifying the protective order, Judge Khalsa suggested that the native form documents be produced for "Attorney's Eyes Only." *See id.* Plaintiff's counsel did not see a problem with that solution. *See id.* at 3:03:23-3:03:58.

Judge Khalsa properly and reasonably considered that Defendants already produced thousands of documents and they had a legitimate concern regarding the risk of inadvertent disclosure of sensitive information. Given that Plaintiff had access to the .pdf form of the documents and her counsel had access to the native form of the same documents, Judge Khalsa's decision reasonably tailored discovery and appropriately struck the balance that Rule 26(b)

requires. Counsel will have the files in searchable form. That the times are in GMT does not render them wrong; a simple calculation can account for MST. The Court is unconvinced that the ruling placed an undue burden on Plaintiff that impedes her ability to prepare and conduct depositions. Judge Khalsa's ruling was not clearly erroneous or contrary to law. The Court thus overrules Plaintiff's objections to Judge Khalsa's decision limiting how the native files must be produced.

### B. Court overrules Plaintiff's objection to Court's denying in part Plaintiff's motion to extend case management deadlines.

As to Plaintiff's motion to extend case management deadlines, Judge Khalsa found that good cause did not exist to extend all requested deadlines, in part, because the "case has been pending for a long time with ample opportunity for discovery." Order 8, Dkt. No. 69. Plaintiff insists that the Court based its discovery limitations on an erroneous case posture. She contends that the case was not old and had never been delayed, so a full extension of case management deadlines should have been granted. According to Plaintiff, the Court's order results in Defendants unjustly benefitting from its failure to timely produce native files, as she was "forced" to cancel depositions because she did not have the discovery she needed to prepare for and conduct them.

Judge Khalsa explained that the parties were given a longer than usual 240-day discovery track. At the time of the Court's Order, the case had been pending for approximately 10 months, and trial was only about seven months away, with motion deadlines upcoming. The Court declines to find error in Judge Khalsa's finding that the case had "been pending for a long time with ample opportunity for discovery." The Court thus overrules Plaintiff's objection to Judge Khalsa' factual finding regarding the case posture.

Nor did Judge Khalsa clearly err in determining that Plaintiff had not acted with the requisite diligence to meet Rule 16(b)'s "good cause" standard. The Court appropriately considered Rule 16(b)(4). *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for

good cause and with the judge's consent."). The good-cause standard requires the moving party to show the scheduling deadlines cannot be met despite diligent efforts. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n,* 771 F.3d 1230, 1240 (10th Cir. 2014). As Judge Khalsa accurately explained, Plaintiff's counsel had the material in .pdf form, yet she chose not to review it until she received the native files. Contrary to Plaintiff's argument, this finding is supported by the record. While it may have been more expeditious to review the material in native form, 5,000 documents are not so voluminous that counsel could not review them to prepare for depositions. Despite having the discovery in .pdf form, Plaintiff's counsel had not taken a single deposition, and she waited until the date on which her expert reports were due to seek an extension of deadlines. Judge Khalsa had ample support in the record for her lack-of-good-cause finding. Moreover, despite the finding, Judge Khalsa granted an extension of certain deadlines. She permitted the disclosure and depositions of retained experts, and she allowed Plaintiff to depose Defendant Shelton and the two fact witnesses identified at the hearing. These findings and decisions were not clearly erroneous or contrary to law, so the Court overrules Plaintiff's objections to them.

**C. Court overrules objection to denial of Rule 30(b)(6) deposition.**

Next, Plaintiff objects to the Court's denial of her request to take a Rule 30(b)(6) deposition out-of-time. She asserts that it was clear error to do so where Plaintiff did not have the metadata and native-format documents needed for the deposition prior to the close of discovery.

Three days prior to the close of discovery, at the hearing, Plaintiff for the first time indicated that she sought to depose a Rule 30(b)(6) representative. Plaintiff had not noticed such a deposition. Judge Khalsa rejected the request, because Plaintiff waited until the close of discovery to make the request, she had not noticed the 30(b)(6) deposition, and allowing the deposition would

extend discovery far too long, particularly given the trial setting. *See* Liberty Recording at 3:34:53-3:38:12. As Judge Khalsa cogently explained in her Order,

> Rule 30(b)(6) designees have an affirmative obligation to educate themselves about the entity's knowledge of noticed topics, including by reviewing documents and interviewing current or former employees. Preparing and designating a Rule 30(b)(6) witness or witnesses depends on the quality and breadth of a Plaintiff's Notice. Counsel for the parties generally have to meet and confer multiple times over weeks or even months during discovery to narrow the scope of overbroad topics and ensure adequate designation and preparation of 30(b)(6) witness(es). Noticing and preparing for a 30(b)(6) deposition is often time-consuming and costly. Plaintiff has failed to demonstrate good cause for her complete failure [] to serve a 30(b)(6) deposition notice to date. That she has not received metadata is simply insufficient to persuade the Court to further delay this already long pending case.

Order 9-10, Dkt. No. 69 (internal citations omitted). Judge Khalsa's reasoning is reasonable and not clearly erroneous. Plaintiff could have noticed a Rule 30(b)(6) deposition, even without having the native files. Nor is the Court convinced that production of the native files was imperative prior to conducting such a deposition, given the disclosure of the .pdf files. Plaintiff lacked good cause for her dilatory conduct in noticing the deposition. The Court overrules Plaintiff's objection to the denial of her request for an extension to conduct a Rule 30(b)(6) deposition.

**D. Court overrules objection to ruling that Defendants need not produce privilege log for documents withheld after January 2, 2024.**

Defendants received a letter from Plaintiff's counsel on January 2, 2024, advising that Plaintiff had claims she could bring against them. *See* Jan. 2, 2024 Letter, Dkt. No. 56-3; Obj. 11, Dkt. No. 84. The letter stated that "Ms. Pepe has clear legal claims which she could successfully bring against Sandia" and that she seeks compensation for her distress and reimbursement for her legal costs under the FMLA and the ADA. Jan. 2, 2024 Letter 3-4, Dkt. No. 56-3. Finding January 2, 2024, to be the date when Defendants received clear notice of the potential for litigation, Judge

Khalsa did not require Defendants to produce a privilege log for documents withheld after that date based on attorney-client privilege. *See* Liberty Recording at 2:33:25-2:36:43.

Plaintiff objects to this ruling, arguing it does not enable her to determine how many documents are being withheld or if some documents involve communications only with her management chain. She contends that it was "clearly erroneous to find that a party who repeatedly refused to willingly produce a privilege log did so by accident or through no fault of their own" and that the Court should have concluded that Defendants' failure to produce a privilege log constituted waiver. Obj. 11, Dkt. No. 84. She argues that the Court erred at the April 7, 2026, hearing when it characterized Defendants' failure as "inadvertent." *Id.*

When a party withholds documents based on a privilege or subject to protection as trial-preparation material, the party must "expressly make the claim" and describe the nature of the withheld documents in a manner that enables the other party to assess the claim. Fed. R. Civ. P. 26(b)(5)(A). A party who produces an inadequate privilege log may be deemed to have waived the privilege. *Anaya*, 251 F.R.D. at 651. "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Relatedly, the "attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'" *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal quotations omitted). The burden of establishing that the attorney-client privilege applies is on the party asserting it. *Id.* at 1183.

Turning first to the question of waiver, Judge Khalsa declined to find that Defendants waived the attorney-client privilege by not producing a complete privilege log. Order 5, Dkt. No. 69. According to Defendants, they believed, based on a conversation with Plaintiff's counsel, that

the parties had agreed that Defendants did not need to include on a privilege log any communication occurring after the date Plaintiff informed them that she retained counsel, on December 5, 2023. Defs.' Resp. to Obj. 11, Dkt. No. 91. Defendants produced a partial privilege log and had a good-faith belief as to why they did not need to produce a full privilege log after the date Plaintiff notified Defendants of likely litigation. Judge Khalsa nevertheless ordered Defendants to supplement their privilege log as to documents withheld prior to January 2, 2024. Order 5, Dkt. No. 69. The Court also ordered Defendants to disclose the documents in the privilege log in unredacted form for an *ex parte* review by the Court. *Id.* at 5-6. Judge Khalsa's ruling that Defendants did not waive the privilege on this record was not clearly erroneous or contrary to law.[1]

Regarding documents created after January 2, 2024, Judge Khalsa determined that a privilege log was not needed for the following category of documents withheld based on attorney-client privilege: communications made in confidence for the primary purpose of obtaining legal advice between in-house counsel and managers of Defendant and/or between managers of Defendant. *See* Order 6, Dkt. No. 69. For material created after January 2, 2024, and withheld based on attorney-client privilege, but not falling within the scope of the aforementioned categories, Judge Khalsa ordered Defendants to produce a supplemental privilege log to both Plaintiff and the Court. *Id.* The Court would determine thereafter whether to conduct an *in-camera* review. *Id.*

Contrary to Plaintiff's argument, Judge Khalsa did not allow Defendants to assert the "potential for litigation as a complete defense to discovery," Obj. 12, Dkt. No. 84. Instead, Judge Khalsa carefully cabined the assertion of privilege to confidential communications made "for the

[1] Judge Khalsa subsequently conducted an *in-camera* review of unredacted copies of all documents Defendants produced that were attached as Exhibit 4 to Plaintiff's Motion to Compel. Order, Dkt. No. 127. The Court determined that the redacted information was properly withheld on a valid assertion of attorney-client privilege and did not compel further production. *Id.*

primary purpose of obtaining legal advice." Order 6, Dkt. No. 69. That ruling is consistent with the law protecting attorney-client communications. *See In re Grand Jury Proceedings*, 616 F.3d at 1182. Moreover, Plaintiff's counsel clearly threatened Defendants with litigation in the January 2, 2024 letter. Judge Khalsa essentially determined that January 2, 2024, was the point in time in which "the focus of the principals' discussions shifts from the acts or omissions giving rise to the claims to the prosecution or defense of the lawsuit." *Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 51 (S.D.N.Y. 2009). That decision is not clearly erroneous. *See id.* (explaining that "transition certainly would have taken place by the time this action was filed, but arguably may have occurred earlier since the parties had a prior skirmish").

Additionally, Plaintiff argues that denying her a privilege log impermissibly shields internal management communications about her job. Judge Khalsa, however, did not err in recognizing that the attorney-client privilege may extend to communications between corporate employees if the communications are made for the purpose of securing legal advice. *See Williams v. Sprint/United Management Co.*, 238 F.R.D. 633, 638 (D. Kan. 2006) (and cited cases). Moreover, the lack of a privilege log does not stymie Plaintiff from considering and challenging specific assertions of privilege.

For all the foregoing reasons, Judge Khalsa did not clearly err in not requiring responsive post-January 2, 2024, information that is withheld based on the attorney-client privilege to be disclosed in a privilege log. *Cf. Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 139 n.22 (3d Cir. 2009) ("We underscore that a privilege log may not be required for communications with counsel that take place after the filing of a law suit."); *Harleysville Worcester Ins. Co. v. Sharma*, No. CV 14-2472(LDW), 2015 WL 3407209, at *2 (E.D.N.Y. May 26, 2015) (explaining that privilege logs are commonly limited to documents created before date litigation initiated);

*Capitol Records*, 261 F.R.D. at 51 (refusing to require defendant to log any attorney-client communications or work product documents created after declaratory judgment action filed).

**E. Court overrules objection to decision not to award fees.**

When a court grants a motion to compel discovery, the court "must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless the opposing party's failure "was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). Substantial justification requires only a legitimate position. *N.M. ex rel. Balderas v. Real Estate Law Center, P.C.*, 429 F.Supp.3d 996, 1008 (D.N.M. 2019). Put another way, the question is whether reasonable people could differ as to the appropriateness of the contested action. *See Lester v. City of Lafayette*, 639 F. App'x 538, 542 (10th Cir. 2016) (unpublished) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Here, Defendants had legitimate positions to defend, and the motion to compel was granted in part and denied in part. Judge Khalsa did not clearly err in not granting Plaintiff's request for fees.

**IT IS THEREFORE ORDERED** that Plaintiff's *Objections to the Court's April 8, 2026 Order Granting and Denying in Part Plaintiff's Motions to Compel and to Extend Deadlines* (**Dkt. No. 84**) are **OVERRULED**.

**SO ORDERED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***